# EXHIBIT 2

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

ESCAB ENTERPRISES, INC.

AND

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ

LOCATION: NAVAL MEDICAL CENTER (Buildings 1-8, 50, 54, 55 and 241)

START:         OCTOBER 1, 2010
EXPIRATION: SEPTEMBER 30, 2013

THIS AGREEMENT, entered into as of August 31st, 2010, between ESCAB ENTERPRISES, Inc., (hereinafter referred to as the "Employer"), and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ, (hereinafter referred to as the "Union").

## ARTICLE I - DECLARATION OF PURPOSE

SECTION 1.1. The purpose of this Agreement is to insure industrial peace by setting forth herein rates of pay, hours of work and conditions of employment to be observed between the parties hereto. The parties hereto recognize that only with mutual understanding, harmony and cooperation among Employees, and between Employees and the Employer, and with uninterrupted operation is it possible to conduct the Employer's business with the economy and efficiency indispensable to its existence and to the best interests of its Employees, clients and customers.

## ARTICLE II- UNION RECOGNITION SCOPE OF AGREEMENT

SECTION 2.1. The Employer recognizes the Union as the sole collective bargaining agent for all custodial Employees employed by the Employer at the Naval Medical Center located in Bethesda, MD, excluding office clerical Employees, guards and/or watchmen and supervisors as defined in the National Labor Relations Act, as amended, and excluding all other Employees in accordance with the National Labor Relations Act.

## ARTICLE III UNION SECURITY/CHECK-OFF

SECTION 3.1 All employees who are members of the Union on the effective date of this Agreement, or join hereafter, shall maintain their membership, or satisfy the financial obligations set by the Union during the term of this Agreement as a condition of continued employment. All employees covered by this Agreement who are not members of the Union and choose not to become members of the Union shall, as a condition of continued employment, pay to the Union an agency fee as established by the Union. All employees hired after the effective date of this Agreement shall, within thirty-one (31) days after employment, become members or agency fee payers as a condition of continued employment. Employees meet the requirement of being members of the Union within the meaning of this Article, by tendering the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership in the Union, or, in the alternative, by tendering to the Union agency fees, including initiation fees in compliance with Federal Law.

SECTION 3.2 Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he or she has not met the requirements of this Article, unless the Employer questions the propriety of doing so, the employee shall be discharged within fifteen (15) days of the letter if prior thereto the employee does not take proper steps to meet the requirements.

SECTION 3.3 The employer shall notify the Shop Steward all new hires in the bargaining unit within thirty (30) days of the date of hire.

SECTION 3.4. The Employer agrees to deduct monthly dues, initiation fees, agency fees, American Dream Fund or Political Action Fund contributions from the wages of an employee covered by this Agreement, when authorized by the employee in writing in accordance with applicable law. The Union will furnish the necessary authorization forms to the Employer. At the same time the Employer remits its dues each month, the Employer shall provide the Union a list of employees by accounts, and include the name, social security number, date of birth, date of hire, and/or termination date, and Union deduction, if made.

SECTION 3.5 The employer shall make employee approved deductions twice a month (10th and 25th paydays) and shall submit the dues and other authorized fees to the Union by the 20th of the following month.

SECTION 3.6 The Union agrees to indemnify and save the Employer harmless against any claim, suits, judgments or liabilities of any sort whatsoever arising out of action taken by the Employer for the purpose of complying with the provisions of this Article.

## ARTICLE IV MANAGEMENT RIGHTS

SECTION 4.1 The management of the Company's affairs and the direction of its working force, including but not limited to the right to establish new jobs; abolish or change existing jobs; working hours, change materials, processes, products, equipment and operations; schedule and assign work; judge employee performance and qualifications; hire, suspend, discipline and discharge for cause; and transfer or layoff Employees because of the lack of work, shall be vested exclusively in the Company.

SECTION 4.2 The Company reserves the sole and exclusive authority to draft, issue, implement, revise, enforce and withdraw reasonable rules of conduct and reasonable regulations as the Company deems necessary. However, such rules and regulations shall not be inconsistent with the provisions of this Agreement. The Company will provide copies of such rules and regulations, and any changes thereto, to the Union. Any infraction of the rules and regulations, once implemented, constitutes just cause for disciplinary action, including discharge.

SECTION 4.3 The list of management rights set forth in this Article is not intended to be nor shall it be construed as a restriction or waiver of any rights of the Company not listed and not specifically surrendered in this Agreement, whether or not such rights have been exercised in the past.

## ARTICLE V GOVERNMENT REQUIREMENTS

SECTION 5.1 The Union agrees to cooperate with the Company in all matters required by the Government, and the Union recognizes that the term and conditions of the Agreement are subject to certain priorities which the Government may exercise. The Union agrees that any actions taken by the Company pursuant to a requirement of the Government or at the direction of the Government shall not constitute a breach of this Agreement. Nothing in this Agreement shall be construed to prevent institution of any change prior to discussion with the Union where immediate change is required by the Government. The company will, however, negotiate with the Union concerning the effects of any such change.

SECTION 5.2 If the Government directs that a specific employee be removed from the contract or otherwise disciplined or reassigned, any such action directed may be undertaken by the Company and shall not be subject to the grievance or arbitration procedures of this Agreement. In the event that the Government expressly directs the removal, discipline or reassignment of a contract employee, the Company agrees to cooperate with the Union by providing it with all relevant information.

SECTION 5.3 It is recognized and acknowledged that the work performed under this Agreement is being performed at a Government military medical center, and it is therefore essential and expected that all employees will act in a manner appropriate to such an environment. It is further recognized and acknowledged that the Government imposes specific requirements concerning the manner in which the work under this Agreement is to be performed, and it is essential and expected that all employees comply with such requirements.

SECTION 5.4 The parties agree that if the government contests the outcome of these negotiations in accordance with the Service Contract Act, the parties will take actions necessary in accordance with applicable laws to reach a collective bargaining agreement.

## ARTICLE VI - WAGES

SECTION 6.1. Upon the effective date of this Agreement, the Employer shall pay the rates as follows:

| Classification | Current | 10/1/10 | 10/1/11 | 10/1/12 |
|---|---|---|---|---|
| Custodial | $ 12.60 | 13.04 | 13.50 | 13.97 |

Employees who perform work on the third shift (12:00 PM to 7:00 AM) shall receive additional compensation of one ($ 1.00) dollar per hour.

4

## ARTICLE VII SENIORITY/LENGTH OF SERVICE

SECTION 7.1. The Employee's length of service shall be computed from the date on which he/she is hired by the Employer, or his/her date of employment at the Naval Medical Center, whichever is longer.

SECTION 7.2. Layoffs will be determined by length of continuous service at the Naval Medical Center; the Employees with the least amount of continuous service and ability to perform the job shall be laid off first. Recall of laid off Employees shall be in the reverse order of layoff, subject to ability to perform the job. An Employee duly notified by the Employer to return to the job, must return to such job.

An Employee's continuous service shall be broken so that no prior period of employment shall be counted and seniority shall cease upon:

    (a)    Justifiable discharge

    (b)    Voluntarily quitting

    (c)    Absence for five *(5)* working days, unless excused by the Employer by reason of illness or other unexcused disability or other reasonable cause.

(d)    Failure of an Employee to return to work upon recall within five *(5)* working days after written notice is sent by the Employer to their last known address.

SECTION 7.3. New employees shall be on probation until completion of sixty (60) calendar days of service from the date of hire. During this probationary period, such Employees shall be considered as being on trial subject to immediate dismissal at any time at the sole discretion of the Employer. Discharge during the probationary period shall not be subject to ARTICLE VIII - GRIEVANCE AND ARBITRATION. Upon completion of sixty (60) calendar days, such Employee shall enjoy seniority status from the date of hire.

## ARTICLE VIII- GRIEVANCE PROCEDURE

SECTION 8.1. It is agreed that any dispute arising out of this Agreement between an Employee and the Employer or the Union and the Employer shall be resolved using the procedure set out below.

    Step 1. The Employee or the Union and the immediate supervisor shall attempt to resolve any differences at the time they arise. In the event they are unable to resolve the issue, the Employee or the Union shall request a meeting with the Assistant Executive Housekeeper and the shop steward to attempt to resolve the issue If they are unable to resolve the issue, the grievance shall be submitted in writing to the Executive Housekeeper within five *(5)* working days.

5

Step 2. The Executive Housekeeper and the Union Representative shall meet within five *(5)* working days to attempt to resolve the issue. If they are unable to resolve the issue, or if they are unable to meet within five (5) working days, the grievance will be moved to Step 3.

Step 3. The grievance shall be submitted to the President (or his designee) in writing within five *(5)* working days after the Step *2* meeting or the last date on which the Step 2 meeting could take place under the time limits above. The President (or his designee) will respond to the grievance within ten days of receiving the written grievance or the grievance shall be advanced to Step 4.

Step 4. If the grievance is not resolved at Step 3, or if the President (or his designee) does not respond within ten working days of receiving the grievance, the Union may submit the grievance to arbitration by submitting a written demand for arbitration to the President within ten (10) working days of the President's Step 3 response or the last date on which the President's response was due. The demand for arbitration shall identify the provisions of the Agreement allegedly violated.

SECTION 8.2: Arbitration.

A. The parties shall attempt to mutually select an impartial arbitrator. If the parties are unable to agree upon the choice of an arbitrator, they shall choose an arbitrator from a panel or panels provided by the Federal Mediation and Conciliation Service. The fees of the arbitrator and necessary expenses, including transcript, if requested by both parties, of any arbitration proceeding shall be borne equally by the Company and the Union except that each party shall pay the fees of its own counsel or representative.

B. The decision of the arbitrator shall be final and binding. The arbitrator shall have no authority to modify, amend, revise, add to, or subtract from any of the terms or conditions of this Agreement.

C.   The parties will make every effort to have the arbitration scheduled as soon as practicable.

D.   A written award shall be made by the Arbitrator within thirty (30) days after the hearing closes. If an award is not timely rendered, either the Union or the Employer may demand in writing of the Arbitrator that the award must be made within ten (10) more days. By mutual consent of the Union and Employer, the time for both the scheduling of the hearing and issuance of the award may be extended. Upon the joint request of all parties, the Arbitrator shall issue a "bench decision" with written award to follow within the required time period.

SECTION 8.3 A grievance involving discharge or a suspension of an employee shall be brought directly to Step 3 and must be filed in writing stating that the Union requests a Step 3 level meeting, within ten (10) working days of discharge. A grievance not involving discharge or suspension shall be without effect unless filed in writing within ten (10) working days from the

6

date the complaining party discovered the facts or should have discovered the facts giving rise to the grievance.

SECTION 8.4 At any Step of the grievance procedure, the Company or the Union May designate a substitute for the official designated herein.

SECTION 8.5 Any agreement to extend any of the time limits set forth in this Article must be in writing and agreed by both parties.

SECTION 8.6. Time Limits

  A. Time limits in this Article shall exclude Saturday, Sunday and paid holidays. The time limits in this Article may be extended, in writing, by mutual agreement of both parties.

  B. If the Employer fails to respond within the time limits prescribed, the grievance shall be processed to the next step in the grievance procedure.

  C. If the Union fails to respond within the time limits, the submitted grievance shall be considered withdrawn and settled.

SECTION 8.7 <u>Attendance by Grievants</u>

  Grievant and one shift shop steward attending grievance meetings shall be paid by the employer for their regularly scheduled hours only when the grievance meeting is held while the employee and/or the Shop Steward are working his/her regular schedule and the meeting is at the Naval Medical Center. Grievants who have been suspended or terminated will not be paid by the Employer to attend grievance meetings. Nothing herein shall require the Employer to schedule grievance meetings during working time that will last more than sixty (60) minutes.

## ARTICLE IX- DISCHARGE AND DISCIPLINE

SECTION 9.1. It is agreed that each party shall treat the other with mutual respect and dignity and that the employer shall only discharge or discipline Employees for just cause. The Employer agrees to use progressive discipline where warranted under the circumstances. Warning notices (but not other disciplinary action) will be removed from the Employee's file if no similar offense occurs within a twelve (12) month period.

SECTION 9.2 : All employees shall have the right to have a steward present at any investigative meeting that the employee reasonably believes might lead to discipline. It is the employee's responsibility to request that the steward be present. The Shop Steward shall be present at all disciplinary meetings of employees if requested by the employee and a Shop Steward is at the project site.

## ARTICLE X  HOURS OF WORK

SECTION 10.1 The term "Full-time Employees" as used in this Agreement, applies to those individuals who are regularly scheduled to work forty (40) hours and thirty-five (35) hours every week. The term "part-time Employees" applies to those individuals regularly scheduled to work not less than twenty (20) hours every week.

SECTION 10.2 Full-time employees normally scheduled for forty- (40) hours will be divided into five (5) days of eight (8) hours each. Full-time employees normally scheduled for thirty-five (35) hours will be divided into five (5) days of seven (7) hours each. Part-time employees normally are scheduled for twenty-five (25) to thirty (30) hours.  On limited occasions the Employer may be required to change these hours to comply with their government contract.

SECTION 10.3 Overtime, when necessary, can be required and scheduled by the Employer and will normally be offered to the most senior Employee whom the Employer determines has the appropriate skill levels and qualifications. If that Employee refuses overtime, it shall be offered to the next senior and so on through the seniority list until the work is undertaken or the list exhausted. In the event the list is exhausted, the Employer shall require the least senior Employee to work and if more than one Employee is necessary, the assignment shall continue in reverse order.

SECTION 10.4 An Employee called in outside his/her regular work schedule shall be guaranteed a minimum of four (4) consecutive hours of work or pay in lieu thereof.  A Full-time regular Employee who is called in on a non-scheduled workday will be guaranteed four (4) hours of work or pay in lieu thereof.

SECTION 10.5 NAVAL MEDICAL CENTER CLOSING:  If the entire Naval Medical Center is closed for whatever reason and not made available to any personnel of the Employer, and if the Employer is paid by the Government for days the entire Naval Medical Center is closed, the employees also will be paid.

SECTION 10.6 PAY ERROR:  When there is an error in the pay of an employee over $50, the Employer will, whenever possible, correct the error within seven (7) working days from the date the employee reports the error to his/her account manager.  All other adjustments shall normally be made in the next payroll check.

SECTION 10.7 SNOW DAY: In instances of inclement weather where the Employer is required to assign persons for snow removal, such assignments shall be made from a volunteer list by seniority. Should the use of the list not produce the required number of persons the Employer may ask for volunteers or draft personnel using the least senior qualified person first.

SECTION 10.8 GRACE PERIOD: All employees will be granted a seven (7) minute grace period, with the understanding that the grace period will be available no more than three (3)

times within every thirty calendar days. After the third (3) time employees will be docked and may be subject to discipline. All employees who report to work and clock in after the 7 minute grace period will be docked for 8 minutes or more and may be subject to discipline. The failure to clock in will subject an employee to disciplinary action.

## ARTICLE XI UNION RIGHTS

SECTION 11.1. Unless not permitted by the government, the Employer shall provide space for Union literature in a place convenient for Employee use.

SECTION 11.2. Upon reasonable notice to the Employer, the Union shall have the right to inspect the Employer's personnel files of all Employees in the bargaining unit to the extent necessary to enforce this agreement.

SECTION 11.3. Each Employee shall have the right to inspect his/her personnel file annually, during normal office working hours (Monday to Friday) and with twenty four (24) hours notice to the Director of Human Resources in the main office (phone number 301-948-3395 ext. 29). The employee will review his/her personnel file in the presence of Human Resources Director and may not take any pages from his/her personnel file. The employee may request copies of his/her personnel file. The Director of Human Resources will not deny this right unjustly.

SECTION 11.4 The employer shall provide employees with reasonable, unpaid leaves of absence for union-related activities, where practicable. Employees on Union-related leave shall accrue seniority during the leave period. The Union and the Employer shall discuss the number and duration of such leaves of absence in any period of time.

SECTION 11.5  Stewards and Union officers shall not interfere with the management of the Company's business or the work of any employee, but may advise the Company of any alleged violations of the Agreement. Stewards and Union officers may not interview any employee or otherwise conduct Union-related business with any employee while such employee is on duty, unless prior approval is given by the Company. Nor shall any employee conduct Union-related business while on duty without permission. Subject to government rules and requirements, Stewards are authorized to remain on the premises for such reasonable periods as are required to meet their union responsibilities, and employees whom a steward or union official wish to interview may remain on the premises for such reasonable period following their shift as will enable the desired interview to take place. Employer property, equipment and office facilities shall not be used to conduct any form of Union-related business without prior approval by the Company. Employees who violate this section will be subject to disciplinary action.
  The Employer will make all reasonable efforts to obtain access approvals required by the Navy Medical Center Security Department for Union Officials to enter for union related activities. Notices for access must be given at least 48 hours before access is needed.

## ARTICLE XII- HOLIDAYS

SECTION 12.1. Except for Employees regularly scheduled for weekend and holiday work, the Employer shall grant to all Employees the following holidays off with pay:

| | |
|---|---|
| New Year's Day | Columbus Day |
| Martin Luther King's Birthday | Veteran's Day |
| George Washington's Birthday | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Independence Day | |
| Labor Day | |

and all future holidays declared as legal by the United States Congress or by Executive Proclamation.

SECTION 12.2. Except for Employees regularly scheduled for weekend and holiday work, an Employee required to work on any one of the holidays listed above shall receive holiday pay and shall also be paid at the straight time rate for each hour worked on the holiday.

SECTION 12.3 When a legal holiday covered by this Agreement falls on an Employee's day off from his/her regular schedule, the Employee shall be compensated a full day at his/her straight time hourly rate of pay, or in lieu thereof the Employee shall receive a day off with pay within a period two weeks before or after such holiday.

SECTION 12.4. In order to be eligible for holiday pay, an Employee must work all of his/her scheduled hours on his/her scheduled workday before and after the holiday, unless he/she is on a previously scheduled vacation or within the grace period guidelines of section 10.8. If an employee is late or leaves his/her shift early because of a verifiable emergency (for example, employee is admitted to hospital; employee goes to emergency room for life threatening emergency treatment; hospitalization of immediate family member such as spouse and/or children for emergency care) the day before or after a holiday included in this Agreement, the employee shall not lose such a holiday. Proof of the verifiable emergency shall be required by the employer.

SECTION 12.5 An employee who is assigned to work on a holiday and refuses or fails to report shall be subject to discipline at the Company's discretion.

SECTION 12.6 Holiday pay shall not be used for the purpose of computing overtime.

ARTICLE XIII VACATION

SECTION 13.1. Employees shall receive paid vacation based on the following schedule:

| YEARS OF SERVICE | DAYS OF PAID VACATION |
| --- | --- |
| 1 year | 5 days |
| 2 year (s) | 10 days |
| 5 year (s) | 15 days |
| 10 years | 20 days |

SECTION 13.2. Vacation shall be with pay at the Employee's current hourly rate of pay, based on the regularly scheduled number of hours worked per day. Each Employee shall be given vacation at the time mutually agreed upon by the Employee and the Employer. The Employer in determining vacation preference shall consider seniority. Once the vacation period is authorized and scheduled, the time for taking such vacation shall not be changed unless the change is mutually agreed upon between the Employee and the Employer.

SECTION 13.3 Vacation is earned on the employee's anniversary date. There is no accrual or vesting of vacation prior to the employee's anniversary date.

SECTION 13.4. Length of service includes the whole span of continuous service with the present (successor) contractor wherever employed, and with predecessor contractor in the performance of similar work at the same federal facility. Vacation pay shall be payable in the pay period preceding the time the vacation is to begin, provided that the Employee notifies the Employer in a timely manner. Employees have to give at least a thirty (30) days advance notice to management for vacation with pay.

SECTION 13.5. When a holiday occurs during the Employee's vacation, the holiday will be paid as holiday pay not as vacation pay.

SECTION 13.6. The Employee may use vacation leave in increments of less than one week for purposes of a personal emergency or extended sick leave. Vacation time can only be used for extended sick leave provided the Employee has used up his/her accrued sick leave and provided he/she provides a doctor's excuse when requested by the Employer. The Employee's request for vacation leave shall not be unreasonably denied provided the Employee notifies the Employer in a timely manner.

SECTION 13.7 The Employer agrees to pay all employees for all unused earned vacation upon separation on the next practical pay day.

## ARTICLE XIV- LEAVE OF ABSENCE

SECTION 14.1 An employee who is a member of the military or reserve will be granted all leave and other rights provided by law.

SECTION 14.2 An employee may take leave under the Family and Medical Leave Act ("FMLA leave") in accordance with applicable law and the Employer's FMLA Policy, in which case provisions of that policy will supersede any provision of this Article which is inconsistent with that Policy.

SECTION 14.3. Except for military leave or FMLA leave, employees may be granted leaves-of-absence at the sole discretion of the Company. Such leave-of-absence may be granted for restoration of health, medical, dental or other treatment, maternity leave, or family hardship, and shall not prejudice seniority status for purposes of layoffs and recalls. Unless otherwise agreed to in writing by the Company, an employee will be required to use all paid leave (vacation and sick) before taking unpaid leave.

## ARTICLE XV BEREAVEMENT LEAVE

SECTION 15.1. Effective February 1, 2007, an Employee who has a death in his/her immediate family, defined as: mother, father, spouse or, son, daughter, sister, brother, grandparents, mother and/or father-in-law, grandchildren, or a member of the immediate family either through adoption or guardianship, shall be paid up to and including three (3) days' regular pay for time missed within one (1) week of the funeral. The number of hours per day for which the Employee shall be entitled to payment shall be equal to the number of hours per day for which the Employee would otherwise have been scheduled to work. Employees will be required to provide proof (funeral itinerary/obituary) to management in order to be paid bereavement leave.

SECTION 15.2. Should such a funeral take place more than 100 miles from the Naval Medical Center, requiring travel time in excess of three (3) days, the Employee may have two (2) additional days off without pay, for the purpose of attending such funeral. Employees may request additional leave, and such leave will be granted at the sole discretion of the Employer.

## ARTICLE XVI JURY DUTY

SECTION 16.1. An Employee who is called for jury service during their work hours shall be excused from work for the days on which they report for service by order of the court, and shall receive for each such day on which they would otherwise have worked, the difference between the straight time hourly rate of pay and the payment received from jury service. An Employee who is called to jury duty must provide proof of service and payment from the court.

## ARTICLE XVII HEALTH AND WELFARE

SECTION 17.1: The Employer agrees to make payments into a health trust fund known as the Building Service 32BJ Health Fund ("Health Fund"), to cover employees covered by this Agreement with health benefits under such provisions, rule, and regulations as may be determined by the Trustees of the Fund, as provided in the Agreement and Declaration of Trust.
SECTION 17.2: The Employer shall contribute to the Health Fund according to the schedule

below for each and every paid hour, up to forty (40) hours per week, for each employee covered by this provision. Contributions for a given month are due no later than the 20th day of the following month.

| | |
|---|---|
| October 1, 2010: | $ 3.54 |
| October 1, 2011: | $ 3.81 |
| October 1, 2012: | $ 4.13 |

SECTION17.3: Employees who are on workers' compensation or who are receiving disability benefits shall be covered by the Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier. The Employer shall not be required to make contributions on behalf of such employees on workers' compensation or disability.

SECTION 17.4: If the employer fails to make required reports or payments to the Health Fund the Trustees may in their sole and absolute discretion take any action necessary, insofar as it is provided for and consistent with law and the Fund's Trust Agreement, including but not limited to immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Fund's Trust Agreement, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs and fees, court costs, fees and interest. If the employer is regularly and consistently delinquent, the Trustees in their discretion may require such security as they deem necessary.

SECTION 17.5: For new hires, there shall be a waiting period of three (3) months before becoming eligible to be participants in the Fund.

SECTION 17.6: If during the term of this Agreement, the Trustees of the Building Service 32BJ Health Fund find the payment provided herein is insufficient to maintain benefits, and adequate reserves for such benefits, they shall notify the parties and the parties shall meet in a good faith attempt to resolve the issue.

ARTICLE XVIII- PENSION

SECTION 18.1. Effective February 1, 2007, the Employer agrees to participate in the Service Employees International Union National Industry Pension Fund, located at 11 DuPont Circle NW Suite 900, Washington, D.C. 20036.

SECTION 18.2. Contributions.  Commencing on April 1, 2010, the Employer agrees to pay forty one cents ($0.41) per paid hour and an additional ten (10) percent in supplemental contributions ( $ 0.45 total). Commencing on April 1, 2011, the Employer agrees pay forty one cents ($ 0.41) per paid hour and an additional eighteen and one half (18.5) percent in supplemental contributions ( $ 0.49 total). Commencing on April 1, 2012, the Employer agrees pay thirty-five cents ($0.41) per paid hour and an additional twenty-seven and seventh tenths (27.7) percent in supplemental contributions ($ 0.52 total).

ARTICLE XIX- SICK LEAVE

SECTION 19.1. Effective February 1, 2008, the Employer will provide sick leave in accordance with this Article.

SECTION 19.2 All full time employees shall be entitled to accrue paid sick leave at the rate specified as follows: Starting October 1, 2010 (six) 6 days per year; starting October 1, 2011(eight) 8 days per year; starting October 1, 2012 eight (8) days per year.

Part Time employees shall accrue sick leave on a pro-rated scale by the number of hours worked in a day. Sick leave shall be used when an employee is unable to perform the functions of his/her position because of illness or injury. Additional sick leave may be granted at the sole discretion of the Employer in meritorious cases where longer periods of illness occur.

The Union agree to work together with the Employer to stop sick leave abuse by encouraging the employees to cash out unused sick leave in accordance with Section 19.3. Sick leave shall be used when an employee is unable to perform the functions of his/her position because of illness or injury. Starting October 1, 2010 Employees who show a pattern of calling in sick on Fridays or Mondays, the day before or after their vacation and who have called in sick on these days or on Fridays or Mondays 3 times or more in a one hundred twenty (120) period will be subject to discipline. The Employer can require a doctor's excuse, in accordance with section 19.5 if a pattern develops or excessive number of "call ins" are used as "sick days". If no doctor's excuse is produced the disciplinary action may be used.

SECTION 19.3 Accrued but unused sick leave shall be paid to the employee following the conclusion of the Employer's government contract anniversary date. All unused sick leave and/or earned vacation must be used before an employee will be permitted to use unpaid leave for any reason, except Union Leave.

SECTION 19.4 An employee who will be absent due to illness or injury must provide the Company with notice of his/her anticipated absence as soon as the need to be absent becomes known to the employee, regardless of the length of the anticipated absence. Failure to do so will result in disciplinary action and in the forfeiture of sick leave in an amount equal to the time the employee was absent.

SECTION 19.5 An employee who is absent due to illness or injury for more than two (2) consecutive work days shall be required to provide to the Company a physician's statement supporting the employee's absence and certifying that the employee is able to return to work. Upon reasonable request, the Company reserves the right to require a physician's statement for absence of any period of time due to illness or injury and/or to require the employee to be examined by an employer-appointed physician at the Company's expense. An employee who does not provide medical certification that he/she is able to return to work, if required or requested under this Article, will not be permitted to return to work.

SECTION 19.6 Where an employee takes leave pursuant to the Company's Family & Medical Leave Policy, the provisions of that policy will supersede any provision of this Article which is inconsistent with that Policy.

### ARTICLE XX  GENERAL WORKING CONDITIONS

SECTION 20.1. UNIFORMS: The Employer agrees that if any Employee is required to wear any type of uniform as a condition of his/her continued employment, such uniforms shall be furnished by the Employer and maintained by the Employee. The Employer shall allow ten (10) minutes for clean-up time at the end of the work shift. An Employee is not permitted to leave his/her assigned work area more than ten (10) minutes before the end of the work shift.

### ARTICLE XXI  DISCRIMINATION

SECTION 21.1. It is agreed by the Employer and the Union that there shall be no discrimination by the Employer or the Union against any employee by reason of race, creed, religion, color, sex, age, disability, sexual orientation, national origin, or because of their involvement in or refraining from participating in union activities.

### ARTICLE XXII SAVING CLAUSE

SECTION 22.1. Should any court find any part of this Agreement to be invalid, it shall not invalidate the remaining provisions.

### ARTICLE XXIII SUCCESSORSHIP

SECTION 23.1 The Employer will promptly furnish the Union notice of termination of any of its cleaning contracts at this location, and will promptly thereafter meet with the Union to negotiate the effects of such termination on bargaining unit Employees.

### ARTICLE XXIV SUBCONTRACTING

SECTION 24.1 The Employer will provide reasonable advance notice of intent to subcontract any of the work covered by this Agreement, except for work that is presently sub-contracted (including cleaning windows and cleaning garages).

### ARTICLE XXV - LABOR-MANAGEMENT COMMITTEE

SECTION 25.1. The Union and the Employer both agree that in the interest of efficient management and harmonious Employee relations, it is desirable that meetings be held between representatives of the Employees and management when requested by either party. Such

meetings shall be exclusive of the grievance procedure and grievances shall not be considered at such meetings, nor shall negotiations for the purposes of altering the terms of this agreement be held at such meetings.

SECTION 25.2. The committee shall be made up of no more than 3 representatives of management and 3 representatives of the Employees. The representatives shall be released from the normal duties to attend meetings which shall be scheduled at mutually agreed upon times and upon reasonable notice.

## ARTICLE XXVI- NO STRIKE AND NO LOCKOUT

SECTION 26.1 The Union, its officers, agents, representatives and members shall in no way, directly or indirectly, authorize, call, cause, assist, encourage participate in, ratify, condone or sanction any strike, sympathy strike, sit down, slow down, picketing, boycott, cessation or stoppage of work, or other interference or interruption of work during the duration of this Agreement. The Employer shall have the right to discharge, for cause, with loss of all rights and benefits, suspend, or otherwise discipline any or all employees who incite, induce, encourage, or participate in any of the above-enumerated activities.

SECTION 26.2 During the term of this Agreement, the Company shall not engage in any lockout of its employees.

## ARTICLE XXVII – IMMIGRATION

Section 27.1 Recognizing that questions involving an employee's immigration/work authorization status or personal information may arise during the course of his/her employment, and that errors in an employee's documentation may be due to mistake or circumstances beyond an employee's control, the Employer agrees to the following:

> (a) In the event an issue arises involving the immigration status, employment eligibility, or social security number of an employee, the Employer shall promptly notify the employee in writing.
> (b) If permissible under applicable law and/or regulations, the affected employee shall be afforded reasonable opportunity to remedy the identified problem before any adverse action is taken

Section 27.2 Any lawful corrections in the employee's documentation, name, or social security number shall not be considered new employment or a break in service, and shall not be cause for adverse action.

## ARTICLE XXVIII – MAINTENANCE OF CONDITIONS

Nothing in this Agreement shall be construed to allow for the reduction of any rate, benefit or leave entitlement currently enjoyed by an individual employee, including but not limited to paid leave, personal or vacation days, in compliance with applicable law and government regulations.

## ARTICLE XXX- DURATION OF AGREEMENT

SECTION 30.2 This Agreement shall become effective as of October 1, 2010 and shall continue in full force and effect until September 30, 2013. Either party may provide notice of their intent to negotiate a new Agreement within sixty-(60) days prior to the expiration date of this Agreement.

| SERVICE EMPLOYEES INTERNATIONAL LOCAL 32BJ | ESCAB ENTERPRISES INC. |
|---|---|
| _[signature]_ Vladimir Monge | _[signature]_ Laura [illegible] |
| NAME | NAME |
| Negotiator | Pres |
| TITLE | TITLE |
| 07/10/10 | 7-15-10 |
| DATE | DATE |