# EXHIBIT 6

# SEIU NATIONAL INDUSTRY PENSION FUND
## STATEMENT OF POLICY FOR COLLECTION OF DELINQUENT CONTRIBUTIONS
(Revised January 18, 2007)

The Board of Trustees of the Service Employees International Union National Industry Pension Fund ("Fund") hereby adopts the following policy for the collection of delinquent contributions.

## SECTION 1
### General Policy

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect all Employer contributions when they are due.

The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including but not limited to:

1. The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made, provided that such date and format requirements are not inconsistent with the terms of the collective bargaining agreement;

2. The right to conduct a review of the payroll records of all employees of the Employers required to contribute to the Fund including, but not limited to, payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the Employers that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made;

3. The right to establish an audit or payroll review program;

4. The right to require that a participating Employer pay the cost of a payroll review, plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in conducting the payroll review;

5. The right to recover interest, liquidated damages, attorneys' fees and any other expenses incurred by the Fund in collecting any delinquency;

6. The right to require a bond or a cash deposit as security for prompt future payments due from an Employer that has been habitually delinquent in its contributions to the Fund;

7. The right to enforce this Policy against any Employer that ceases to have an obligation to contribute to the Fund with regard to the time period during which the Employer was obligated to contribute to the Fund;

8. The right to terminate a delinquent Employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion; and

EXHIBIT
PLAINTIFFS'
3

9. The right to take all other steps and to perform all other acts that are necessary in order to collect contributions due to the Fund in a timely and expeditious manner.

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

All questions or disputes relating to the interpretation, meaning and/or application of this policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of its discretion and in the performance of its fiduciary obligations to the Fund's participants and beneficiaries, in the protection of the financial integrity and soundness of the Fund and the efficient and effective administration of the Fund.

## SECTION 2
## Collection Procedure

In accordance with the Trust Agreement, ERISA, and the above declaration policy, the following procedures shall be required of all contributing Employers and the steps set out below shall be taken to effectuate the collection of delinquent contributions.

1. Contributions and supporting remittance reports(s) are due by the 15th day of the month following the month in which the work was performed for which the contributions are owed. Initial contributions and supporting remittance reports for Employers who are newly subject to collective bargaining agreements (*i.e.* for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the collective bargaining agreement was executed by the bargaining parties. Retroactive contributions made on behalf of employees shall be considered timely made if paid by the 15th of the month following the month in which the employee becomes eligible for those contributions.

2. Contributions shall not be regarded as having been timely made unless accompanied by a completed remittance report form (or forms) supplied by the Fund supporting such contributions. The Executive Director may approve the submission of reports in other forms, including on magnetic media, if he determines that providing reports in such form will not cause additional burden or expense to the Fund.

3. If the contributions and the remittance report are not received by the last day of the month in which they were due, the Fund Office shall send a notice of delinquency to the Employer requesting immediate payment of the delinquent contributions plus interest thereon at the rate prescribed by Section 5 of this policy. The notice will demand immediate payment of all delinquent contributions and submission of supporting remittance report(s). The notice will inform the delinquent Employer that, unless the full amount due is received, the matter will be referred to the Fund's legal counsel for collection.

4. If contributions and supporting remittance report(s) in a form acceptable to the Fund are not received by the end of the month in which they are due, the Employer shall, in addition to the underlying delinquent contributions owed, be obligated to pay to the Fund interest at the rate prescribed by Section 5 of this Policy. If contributions and supporting remittance report(s) are not received by the

2

15th day of the month following the month in which contributions are due, liquidated damages in the amount of 5% of the amount owed, with a minimum of $50 and a maximum of $800 for each month's delinquency, shall also be due from the Employer. Notwithstanding the foregoing, interest calculated to be less than one dollar ($1.00) shall not be charged.

5. If the contributions and remittance report(s) are not received by the fifteenth day of the month following that in which contributions were due, the delinquency shall be referred to legal counsel, with copies of notices sent to the Employer. The Fund Office also shall refer to counsel the cases of Employers who have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000.

6. If the Fund Office has not received the proper remittance reports to determine the amounts owed by the Employer, the Fund Office shall estimate the contributions due based on the most recent contributions remitted to the Fund and the Employer shall be deemed delinquent in its contributions in that amount, as a minimum, in any subsequent legal action.

7. If an Employer makes payment of the amount of the delinquency but not payment of accrued interest and other amounts owed, acceptance of the payment shall not constitute a waiver of the Fund's claim for such accrued interest or other amounts.

8. Any unpaid interest or liquidated damages shall be billed to the Employer on the monthly delinquency letters or pre-printed remittance forms generated each month. The Executive Director may suspend collection procedures for liquidated damages and interest when extenuating circumstances are present. However, the Executive Director shall prepare a report to the Trustees of all such actions for their consideration at their next scheduled meeting. The Trustees may, at that time, waive such charges or direct that collection proceedings be reinstated.

9. If an Employer believes it has overpaid contributions, the Employer shall bring the matter to the attention of the Board of Trustees, in writing. If the Trustees determine that the Employer overpaid its contributions for a period of not more than three (3) months, and that such overpayment was due to mistakes of law or fact, the Trustees shall, not later than six (6) months after they determine the contributions were made pursuant to such mistake, give the Employer a credit for the amount of such overpayment. If the Employer is not a participating Employer at the time the request is made, a refund may be made to the Employer. The Trustees hereby delegate to the Executive Director the authority to make the foregoing determination on their behalf. The Executive Director shall refer to the Trustees or the Delinquency Committee described in Section 3, Paragraph 9, any requests for credit or refund for overpayment occurring during a period of more than three (3) month's duration. The Trustees or the Delinquency Committee may, in their sole discretion, authorize credits or refunds for overpayments for periods of time longer than three (3) months, but such credits or refunds for overpayments shall be issued only in a manner consistent with ERISA section 403 (c)(2) and Internal Revenue Code section 401(a)(2). No interest shall be due to any Employer on any overpayment.

10. The Fund Office shall promptly notify legal counsel of receipt of any payment and/or remittance reports from any Employer that has previously been referred to counsel.

11. Legal counsel shall follow the procedures set out in Section 3 of these Rules.

3

# SECTION 3
## Legal Action and Settlement

1. When a delinquency matter is turned over to the Fund's legal counsel for collection, legal counsel shall send a letter to the Employer demanding the required remittance report with payment of the delinquent contributions and advising the Employer of its liability for interest, liquidated damages, and costs.

2. In the event an Employer fails to pay the delinquent contributions and submit the remittance report(s) within twenty (20) days after legal counsel's demand for payment, legal counsel shall initiate legal action for any delinquency in excess of $1,000.00, unless legal counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to the following:

    a. The financial condition of the Employer,
    b. The probability of collecting a judgment once it is obtained,
    c. The Employer's past performance as a contributing Employer,
    d. The amount of the delinquency,
    e. The length of time the delinquent amount has been owed,
    f. The likelihood that the costs of the suit will exceed the recovery, and
    g. Any other factor that, in the judgment of the legal counsel, may have a material bearing on the collection of the delinquent contributions.

3. Legal counsel is authorized to enter into settlement negotiations with delinquent Employers. Without further approval of the Board of Trustees, legal counsel is authorized to settle claims against delinquent Employers in instances where the delinquent Employer promises immediate payment of the delinquent contributions owed, interest thereon, attorney's fees and costs. Any proposed settlement that waives or compromises those amounts must be approved by the Board of Trustees. It shall be the responsibility of legal counsel to advise the Fund, whether, and when, to reinstate any previously waived charges.

4. Legal counsel has the authority to accept any proposal for settlement that contemplates payment of all amounts (including interest and late fees or liquidated damages) due over a reasonable period of time, not to exceed six (6) months. Legal counsel has the authority to reject any proposal for settlement that contemplates payment of amounts due over a period of time or if its acceptance would result in collection of less than the total amount owed. Such rejection shall be subject to the Board of Trustees' subsequent review.

5. At the discretion of the Trustees, settlements may take many forms. Among those forms of settlement specifically authorized is the suspension of liability for interest, liquidated damages, or attorney's fees until a subsequent delinquency by the same Employer, if the collection of such amounts would involve unwarranted expense or risk to the Fund. Such a written settlement providing for nonpayment of interest, late payment penalty, liquidated damages, costs or attorneys' fees may contain a reservation to the Trustees of the right to collect such amounts in the event the

Employer again becomes delinquent in paying contributions during a period not to exceed three (3) years after the settlement is consummated.

6. The Board of Trustees reserves the right to accept or reject an Employer's proposal to pay delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owing, complies with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

7. Settlements calling for payments over time or compromising the amount owed, including interest, liquidated damages, attorneys' fees, or costs, must be in writing and signed on behalf of the Fund and the Employer.

8. Notwithstanding the procedures set out in this policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

9. The Trustees may, from time to time, appoint a Committee of at least one (1) Employer and one (1) Union Trustee to act on behalf of the Board of Trustees, as provided for under this policy.

## SECTION 4
### Payroll Review Procedure

1. The Board of Trustees shall randomly select such number of participating Employers each year for payroll reviews as it deems for time to time to be appropriate. The Board of Trustees may, at its discretion, delegate the task of selecting which Employers shall be reviewed pursuant to this policy to the Executive Director. The Board of Trustees, in the exercise of their discretion, may also choose for a payroll review an Employer who was not randomly selected.

2. The Executive Director may coordinate audit/payroll review activities with those of any other employee benefit plan(s) covering the same employees of the selected Employer. In each case of a joint audit/review, the Fund Office shall enter into an agreement (or agreements) with the other Plan(s) for an equitable allocation of the costs of such audit/review. The Executive Director is authorized to enter into any cost sharing agreement with respect to preliminary payroll reviews (in which testing for discrepancies is involved) in which costs are shared equally. The Executive Director is authorized to enter into any cost sharing agreement with respect to detailed payroll reviews (in which data on a per participant basis is generated) pro-rata in the same proportions as the discovered delinquencies of, or underpayments to, the respective Plans bear to one another. Cost sharing agreements on any other basis must be approved by the Trustees or Committee appointed under Section 3, paragraph 9.

3. The period covered by the payroll review shall be not less than one (1) year.

4. The right of the Fund to conduct a review of an Employer's records shall survive the termination of an Employer's collective bargaining agreement, any other written agreement under which the Employer is contributing to the Fund, or any bankruptcy filing.

5. The Fund Office shall forward a letter to the Employer advising it of the impending review and citing the Trustee's authority to conduct the review.

6. The auditor shall schedule the payroll review with the Employer, who shall make available to the auditor all books and records which the auditor determines are required. Employers with fewer than thirty-five (35) bargaining unit employees shall be required to send the pertinent records to the Fund Office or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area.

7. Where a payroll review of an Employer is conducted and the payroll review discloses an underpayment, the Fund Office shall send a letter to the Employer advising of the underpayment and requesting that the Employer make payment of the underpayment, liquidated damages, interest, testing fees (when appropriate under this policy) and attorneys' fees within thirty (30) days of the date of its receipt of the letter. After the expiration of the thirty (30) day period, a second letter shall be sent to the Employer demanding that the underpayment be remitted immediately. If payment is not received within ten (10) days of the date of such letter, the Fund Office will turn the matter over to legal counsel who will then send a third letter. If payment is not received following the third request, legal counsel shall file suit against the Employer.

8. In the event an Employer refuses to permit a payroll review upon request by the Trustees or if the Employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel.

9. Legal counsel shall thereafter demand that the Employer make available such books and records as are necessary for the Fund auditor to conduct the payroll review. If, within a reasonable period of time not to exceed 60 days, the records are not forwarded to the auditor or made available at a Washington, D.C. Metropolitan area location or at such other location as the Trustees may agree to, the Employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the Employer's records. If necessary, upon approval of the Trustees or Executive Director, counsel shall institute legal action to enforce the Trustees' right to conduct a payroll review and the Employer shall be assessed all costs and attorney's fees incurred as a result of the Employer's refusal to permit the payroll review or refusal to make available all pertinent records. Contributing Employers have a duty to maintain a record of individual hours worked by its employees for at least six years. If an Employer violates this rule of the Fund, the Employer shall have a duty to sign necessary authorizations for any state or federal agency to release tax or other records showing payroll records and expense. If an Employer violates the duty to maintain required records, the burden will be on the Employer to show that any portion of the payroll expense was not for work requiring contributions to this Fund.

10. **Employers** will be billed for net amounts owed in excess of $50.00. Billings will be calculated as follows.

    (a)    Principal: This will be the total of the amount owed for all months showing a net underpayment during the audit period. Each monthly amount due will be net of overpayment.

PLUS

    (b)    Interest: Calculated monthly at 10% per annum. Interest will be calculated for net amounts owed each month and not for months with a net overpayment.

PLUS

    (c)    Liquidated Damages: Calculated at 5% of the total net principal amount, or, if greater, $50.

PLUS

Testing Fee: The testing fee will include the auditor's time and expenses in performing the payroll review. The cost of the payroll review, in addition to any other applicable fees and costs, shall be payable by the Employer whenever a review of an Employer's record discloses principal due equal to or greater than:

    (i)    in the case of an Employer that contributed (or should have contributed) $50,000 or more in any contract year, 5% of the Employer's total required contributions for such period,

or

    (ii)    in the case of an Employer that contributed (or should have contributed) $10,000 or more but less than $50,000 in any contract year, the lesser of

        (A)    7% of the Employer's total required contributions for such period;

or

        (B)    $2,500

or

    (iii)    in the case of an Employer that annually contributed (or should have contributed) less than $10,000, the lesser of

        (A)    10% of the Employer's total required contributions for such period;

or

or

7

       (B)    $1,000.

The testing fee will be charged for the entire audit period whenever one of the above thresholds is met in any of the calendar years tested.

11. The Board of Trustees shall authorize the Executive Director to make decisions regarding the collection of audit billings following the advice of legal counsel. In such cases where legal counsel has advised that the cost of further collection efforts for unsubstantial amounts would not be financially prudent to pursue, the Executive Director may then instruct that no further collection efforts are to be made.

12. The Board of Trustees authorize the Executive Director to issue a refund or credit to any Employer that notifies the Fund during an audit that the Employer overpaid contributions. The written refund request must be presented within two years of the date of the overpayment and the Trustees authorize the Executive Director to deny refunds and credits where appropriate. If an overpayment is discovered by the Fund during an audit, the Executive Director is authorized to issue a refund or credit for such overpayments made during the entire audit period.

## SECTION 5
## Interest, Liquidated Damages, Attorneys' Fees and Costs

1.     Interest owed by a delinquent Employer shall be calculated from the due date for the delinquent contributions through and including the date payment is actually received by the Fund Office at the rate of ten percent (10%) per annum.

2.     In the event a lawsuit or other legal action is filed pursuant to Section 3, and notwithstanding the provisions of Section 2, paragraph 4 and Section 4, paragraph 12(c), liquidated damages shall be calculated from the due date, and shall become due and owing if a lawsuit is filed pursuant to Section 3. The amount of the liquidated damages shall be greater of:

    (a)    The interest on the delinquent contributions determined in accordance with paragraph 1 above;

Or

    (b)    20% of the delinquent contributions.

3.     Attorneys' fees shall be assessed against a delinquent Employer, at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts pursuant to this policy or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

4.  All costs actually incurred in court actions for collection of delinquent contributions or to enforce the Trustees' right to conduct a payroll review of the Employer's records shall be assessed against the delinquent Employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

5.  The obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g). In consideration for permitting its participation, or continued participation, in the Fund, each contributing Employer agrees to be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this policy.

## SECTION 6
## Reports and Records

1.  Legal counsel and the Fund Office shall each prepare a delinquency report to be presented at each Board of Trustees meeting. The report shall show all Employers that are delinquent. The determination of the Board with respect to action on such Contributions, and the specific bases therefore, shall be recorded in the minutes.

2.  The Fund Office shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which Employers are obligated to make Contributions to the Fund.

## SECTION 7
## Effective Date

The revisions to this Policy, which originally was adopted May 1, 1994, shall be effective **March 1, 2007**.